UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERYL GRIFFITH
        Plaintiff

                v.                              Case Number:  8:18-cv-432-26CPT

ROBERT WILKIE, Secretary
U. S. DEPARTMENT OF VETERANS AFFAIRS
        Defendant

_____/

**PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS AND
MEMORANDUM OF LAW IN SUPPORT**

        Pursuant to 42 U.S.C. 2000e-5(k), the attorneys for Plaintiff Derek T. Horne move this

court for attorney's fees and costs.

        1.      Plaintiff initiated her EEO complaint on October 28, 2014 and went through the

Agency's administrative process. This case was filed in federal court by the Plaintiff in February

2018.  On May 31, 2019, the Defendant filed a Motion for Summary Judgment (MSJ).  Dkt 20.

On June 14, 2019, Plaintiff timely filed her Response to Defendant's MSJ.  Dkt. 21.  Plaintiff

dropped a race discrimination and retaliation claim and responded on her reasonable

accommodation claim and hostile work environment claims. On August 20, 2019, the Court denied

the MSJ as to the reasonable accommodation and hostile work environment counts, while granting

it on the race and retaliation counts. Dkt. 22.

        2.      On December 20, 2019, a Settlement Agreement (Dkt. 29-3) was executed by the

parties and filed along with a Joint Motion to Dismiss and Retain Jurisdiction was filed with the

Court "requesting that the Court retain jurisdiction to enforce the parties' Settlement and Release

. . . for the purpose of resolving Plaintiff's counsel's reasonable costs and attorney's fees." Dkt.

29. On December 26, 2019 the Court entered an Order granting the parties Joint Motion to Dismiss and Retain Jurisdiction and retained jurisdiction to resolve the Plaintiff's reasonable costs and attorney's fees. Dkt. 30. In accordance with the Settlement and Release Agreement, the Plaintiff files this motion to decide the reasonable amount of its attorneys fees and costs.

3.     The Settlement and Release Agreement at paragraph 2c states:

> Defendant also <u>agrees to pay Plaintiff's costs and attorney's fees in the amount</u> determined reasonable by order of the United States District Court for the Middle District of Florida, Tampa, Division. (emphasis added.)

4.     Paragraph 5 of the Settlement Agreement makes the Plaintiff's release contingent upon:

> In exchange for this payment and the promises made by the Defendant in this Agreement, to include any payment of Plaintiff's costs and attorney's fees <u>in the amount</u> determined reasonable by order of the United States District Court for the Middle District of Florida, Tampa Division. . .  (emphasis added).

In short, the terms of the Settlement Agreement require the Defendant to pay Plaintiff's costs and fees in an amount determined by this Court to be reasonable, *Id.* ¶2c, and the Release contained in the Settlement Agreement is contingent upon that occurrence.

5.     The sole issue before this Court is the amount of our reasonable fees and costs, not the entitlement.  The first sub-issue is the applicable law.

**Attorney's Fees.**

6.     As it relates to attorney's fees this Settlement Agreement is a fee shifting agreement recognized by the Eleventh Circuit.  *Home Depot, Inc. et al v. Home Depot Inc. (The) Home Depot USA, Inc.* 931 F.3d 1065, 1079 (11th Cir. 2019); *American Disability Association, Inc. v. Chmielarz*, 289 F.3d 1315, 1320-1 (11th Cir. 2002).

7.     In the present case, the Defendant agreed that the Plaintiff was a qualified person

with a disability, neutropenia. Settlement Agreement Dkt. 29-3¶1.[1]   Neutropenia affects her

immune system and can make her very susceptible to infections and viruses.   Dkt. 1¶6.   The

Defendant also agreed to an accommodation (100% telework) which would be applicable in a

series of jobs if that became necessary due to her medical condition. Settlement Agreement ¶2a.

The Defendant further agreed to pay $10,000. *Id.* ¶2b.   Terms of the Settlement Agreement agree

to "pay Plaintiff's costs and attorney's fees in the amount determined reasonable by order of the

United States District Court". *Id.* ¶2c.

8.   In *Home Depot*, the settlement agreement arose in a case which did not involve a

fee shifting statute. Nevertheless, the Eleventh Circuit found that the settlement agreement was a

fee shifting agreement.   931 F.3d at 1079.   The Eleventh Circuit stated:

> But this is a contractual fee-shifting case, not a common-fund case.   As such, it is
> more closely related to the Supreme Court precedent governing fee-shifting
> statutes.   And just because precedent is not technically binding does not mean we
> should blithely disregard it.   To promote consistency in the law, we should adhere
> to precedent where its reasoning applies.
>
>           * * *
>
> Thus, while the statutory cases are not binding on contractual arrangements, we
> will not lightly cast aside the statutory fee-shifting precedent if its reasoning applies
> with full force.   Obviously, the reasoning does not apply if it is specific to statutory
> interpretation.

9.   Under *Chmielarz* the statutory fee shifting applies along with its case law when the

Court retains jurisdiction over the settlement or incorporates terms of the agreement as requested

by the parties. 289 F.3d at 1320.   The parties' motion with attached order requested the Court

retain jurisdiction over the Settlement and Release filed with it, for the purpose of resolving the

Plaintiff's counsel's reasonable costs and attorney's fees. Dkts. 29, 29-1, 29-2. While the Court

---

[1] The first time the Defendant admitted this was in a statement by the AUSA in the MSJ. Dkt. 20 pp1-2.  The
Settlement makes it an official position by the Defendant.

did not enter the order attached to the parties' motion, it retained jurisdiction at least to resolve Plaintiff's reasonable costs and attorney's fees, i.e., the fee shifting portion of the agreement and would thus be applying the statutory fee shifting in *Chmielarz.*  There is little difference between *Home Depot* and *Chnielarz* except perhaps in one area; whether there should be any offset for the denying of the race and retaliation claims.  Under *Home Depot* there can be no offset. 931 F.3d 1065, 1087.  Under *Chmielarz* there potentially could. However, under the facts of this case, there should be no difference under either case.

10.     Therefore, we will address that statutory fee-shifting case law because the Plaintiff is entitled by the Settlement Agreement to have the reasonable fees and costs shifted to the Defendant.  We will also identify any difference which might arise under a purely contractual fee shifting as in *Home Depot*  as opposed to a statutory fee shifting under *Chmielarz.*  In the end, under either case the parties end in essentially the same place.

### Attorney's Fees and Costs

11.     As set forth in the attached declarations of Joseph D. Magri (Exhibit A, A-1) and Angela Merkle (Exhibit F), the Plaintiff's attorneys and their paralegals spent 237.0 hours (109.8 hours by Joseph D. Magri, 10.0 hours by Sean McFadden, 19.6 hours by Gerard Roble, 35.7 hours by Meagan Ross-Culpepper and 61.9 hours by Angela Merkle) regarding the EEO administrative proceedings concerning the Plaintiff.  In allowing an attorney's fee, Congress intended to authorize awards of attorney's fees for work done in connection with administrative proceedings as well as the District Court proceedings.  *See, e.g., New York Gaslight Club, Inc., v. Carey,* 447 U.S. 54, 59-62, 100 S.Ct. 2024, 2029-2030 (1980); *Mertz v. Marsh,* 786 F.2d 1578, 1590-81 (11th Cir. 1986). A plaintiff must go through the EEO administrative process to have jurisdiction in Federal Court. *Crawford v. Babbitt,* 186 F.3d 1322, 1326 (11th Cir. 1999). A reasonable attorney fee includes

work performed by paralegals and law clerks. *Missouri v. Jenkins,* 491 U.S. 274, 287-289, 109 S.Ct. 2463, 2471-2472 (1989).  The parties and issues were the same during the administrative process and generated and comprise Plaintiff's reasonable and necessary costs and fees the Plaintiff was obligated to pay.  Thus, they are costs and attorney's fees and the Defendant agreed to pay them.  Indeed, most of the discovery, including all depositions were taken, and the document production provided by the Defendant was done, during the administrative proceedings and used in the Federal Court proceedings.  This formed the factual basis for the Defendant's Motion for Judgment (Dkt 20), the Plaintiff's Response (Dkt 21) and the Court's Order. Dkt 22.

12.    After this case was filed in Federal Court, 184.3 hours were spent in this case up to the time reflected in the attached exhibits including 73.90 hours by Joseph D. Magri, 1.80 hours by Sean McFadden, 49.0 hours by Gerard J. Roble, and 59.60 hours by Angela Merkle.  Consequently, the total time spent on both the administrative and court proceedings included 183.70 hours by Joseph Magri, 11.80 hours by Sean McFadden, 68.6 hours by Gerard J. Roble, 35.7 hours by Meagan Ross-Culpepper, and 121.5 hours by Angela Merkle.  A detailed breakdown is attached as Exhibit B.

13.    Recoverable costs requested for the administrative proceedings are $8,054.19 and are primarily deposition related.  Costs in the Federal Court are presently $879.29.  These costs are recoverable as traditional court costs or recoverable as part of reasonable attorney's fees as will be discussed below.  These costs were reasonable and necessary and are detailed in Exhibit C.  The date for the costs corresponds to the dates on the bills in Exhibit B.

14.    At the summary judgment stage, Plaintiff dropped her racial discrimination and retaliation claims.  Nevertheless, time spent solely on these claims was negligible and virtually impossible to segregate.  That time "was expended in pursuit of the ultimate result achieved."

5

*Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 (1983). Moreover, under *Home Depot* this issue completely disappears because the Court held:

> Here, of course, the fees are awarded pursuant to a contract, not a statute, and there is no prevailing-party limitation in the settlement agreement. Accordingly, the prevailing-party limitation does not apply, and the District Court did not need to deduct time spent on discrete and unsuccessful claims. Instead, the question is simply whether the time spent was reasonable, which is the standard set in the agreement.

> Time spent is reasonable, and thus compensable, if it would be proper to charge the time to a client. *See Norman,* 836 F.2d at 1301. As with a client, counsel should not include in the lodestar hours that are "excessive, redundant or otherwise unnecessary." *Id.* (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). In other words, counsel must exercise "billing judgment." *Id.* If counsel does not exercise billing judgment, "courts are obligated to do it for them." *Barnes,* 168 F.3d at 428. Thus, "[i]n the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman,* 836 F.2d at 1301.

15.     The Rehabilitation Act, 29 U.S.C. § 791 *et seq.* permits the "prevailing party" to recover reasonable attorney's fees while incorporating 42 U.S.C. § 2000e-5(K). 29 U.S.C. § 794a. A plaintiff is considered a prevailing party for attorney's fees purposes if he or she succeeds "on any significant issue in litigation which achieves some of the benefit the party sought in bringing the suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1922, 1039 (1983); *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686 (1986). In *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940, the Supreme Court stated the following:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Indeed the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Accordingly, *Hensley* emphasized that "[w]here a plaintiff has obtained excellent results, his

6

attorney should recover a fully compensatory fee", and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Ibid*; *City of Riverside,* 477 at 569, 106 S.Ct. at 2691.  If only "partial or limited success" was obtained full compensation may not be appropriate.  "A plaintiff obtains limited success when the substantial <u>relief granted</u> is something less than that which he would have been granted had he succeeded on the unsuccessful claim." *Aviala v. Coca-Cola Co.,* 849 F.2d 511, 514 (11th Cir. 1988). (emphasis added).

16.     It is clear from the complaint (Dkt. 1) that the racial discrimination and retaliation claims simply provided an alternative motivation for the actions of the Plaintiff's supervisor, Dana Heck in denying Plaintiff's reasonable accommodation request and creating a hostile work environment.  The actions he took with regard to her reasonable accommodation were so misplaced it caused the Plaintiff to perceive that he may have been motivated by race or retaliation as well. However, the key claim and the damages have always been based upon the Agency's denial of the Plaintiff's reasonable accommodation. Therefore, the race and retaliation claims were dropped, but the reasonable accommodation and hostile work environment claims were retained. The Settlement Agreement provides a remedy for each.  First, it specifically identifies her as a qualified person with a disability (neutropenia) and sets forth the reasonable accommodation and iterations of that which concerned the Plaintiff. See ¶2a.  Paragraph 2b provides $10,000 in compensatory damages which compensates the Plaintiff for her emotional distress under reasonable accommodation count and the Hostile work environment count.

17.     No reduction of the fee award is appropriate under *Home Depot* because the time spent on the case was reasonable and properly charged to the client. Indeed, to the negligible extent it could be argued to have affected fees, it could at least have resulted in potentially helpful

information including impeaching material.  Under statutory fee shifting case law it should not result in a reduction because the Plaintiff underlined achieved the results she always sought. The results were excellent because they achieved what Plaintiff sought from the beginning of this case: (1) a determination she was a qualified person with a disability (neutropenia) and (2) an accommodation for her disability.  Each of these were issues under every General Allegation of the Complaint paragraphs 6-13, 15-19.  As for paragraph 14 of the Complaint which addresses reprisal, it makes clear that the EEO activity was the repeated requests for reasonable accommodation. The Settlement Agreement not only provides the results sought for all of these things, it addresses another problem created by the Agency's failure to provide the Plaintiff's reasonable accommodation to which she was entitled.  Specifically, the Complaint alleged that:

> 16.      In the fall of 2015, a loan guarantee position opened and Griffith felt compelled to accept it to get out of the hostile environment she had been placed in. She began the loan guarantee position in early 2016 which allowed her to do guarantee work 100% from home. She has performed well in that position. However the loan guarantee position maybe moved out of OGC. Therefore, without ever having had a reasonable accommodation request granted, despite repeated requests, the filing of an EEO Complaint for failure to provide an accommodation and her participation in that process she still has not had a formal approval of her request and an official determination that she is a qualified person with a disability even though the LRAC determined that she was a qualified person with a disability.

> 17.OGC is considering moving attorneys from the loan guarantee group and leaving support staff to complete the work. Then the attorneys will have to find another position within the legal department. OGC is also considering moving the Loan Guaranty out of OGC all together stating it is not really legal work. At that time, the attorneys will have to decide if it is beneficial to their careers to be removed from the OGC and moved to another department within the Defendant to continue reviewing titles or to try to find a legal position somewhere within OGC. The future of this group is very uncertain. As an attorney, that may not be good for the future of her legal career because not only will she not be doing legal work but she also will not be in the legal department. The uncertainty of the future of this department is especially troublesome because Griffith never received a decision on her reasonable accommodation request. She still does not know if the Defendant will accommodate her disability. Therefore, if the loan guaranty position went away, it is unclear if the Defendant would accommodate in another position. Had

8

the Defendant made a decision on her reasonable accommodation request and found her to be a qualified person with a disability she should have been given the contracts job, but in any event would know she is entitled to a reasonable accommodation. The contract position would have given her a solid, stable position without the immediate fear of displacement, and it would have provided her with legal work that she could have used to continue to hone her legal skills. The determination of her status would have at least given her a more stable position.

18. Griffith lives with the constant stress and anxiety that she will have another flare up and not really know if the Agency will accommodate her. There is constant anxiety that she could very well lose her livelihood due to her illness. This is even more significant now with OGC considering either contracting Loan Guaranty out or removing attorneys from the team. Since she never had a final decision on her accommodation, she is not certain where this would leave her if this Loan Guaranty position ends. Griffith did nothing wrong but now lives under the constant scrutiny from colleagues that she did something wrong because she sued the Agency. She was a top performer in the office, an excellent, hardworking attorney for the VA whose reputation has been harmed.

19.    The Settlement Agreement's paragraphs 1 and 2 specifically address these issues

as follows:

1.    This is an employment discrimination action filed pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.,* ("Rehabilitation act"). Plaintiff, whom the parties agree is a qualified individual with a disability based on her diagnosis of neutropenia, alleges she was discriminated against on the basis of her disability and subjected to a hostile work environment when she was denied a reasonable accommodation.

2.    In settlement of this action:

a.    Defendant agrees that Plaintiff will remain in her current position in Loan Guaranty, on 100% telework, as long as her medical condition continues to support the need for 100% telework.  If her current position in Loan Guarantee is eliminated, Plaintiff will be reassigned to the District Contracting National Practice Group of there is a vacant position, on 100% telework, as long as her medical condition continues to support the need for 100% telework.  If there is no position in the Contracting National Practice Group, Plaintiff will be reassigned to the Informational Law Group if there is a vacant position on 100% telework, as long as her medical condition continues to support the need for 100% telework.  If there is no position in the Information Law Group, Plaintiff will be reassigned to a vacant funded position, on 100% telework, as long as her medical condition continues to support the need for 100% telework, and as long as such a vacant funded position then exists. Any such reassignment will be to a position at a commensurate pay and grade.

9

20.     She has also always sought her reasonable attorney's fees and an emotional distress payment.   The Settlement Agreement entitles her to reasonable attorney's fees and costs in an amount determined by the Court and the payment of $10,000.00.

21.     This case was never about money for her. From the outset the VA refused to address her accommodation demands. Settlement was consistently rejected because of the VA policy not to settle cases for more than $5000.00, including attorney's fees and various non-monetary relief absent approval by the Under Secretary which they refused to obtain. That policy repeatedly thwarted all reasonable settlement efforts.[2] This forced Plaintiff to incur the additional expense of litigating through the administrative process to a frustrating judge-led mediation before filing in federal court.   The Agency's intransience continued in federal court.   It manifested itself in a rejection of a settlement demand in January 2019 of $10,000 and attorney's fees.   It is also reflected in the unusual request by the AUSA to be excused from mediation. (Dkt. 17).

22.     The Agency's position in this case was grossly improper.   An attorney who was a qualified person with a disability had those findings denied to her despite her formal request for accommodation.   The opinions of the person assigned to provide her reasonable accommodation were not only ignored but not allowed to be placed in her official file. Dkt 1. At one point she was forced to come to work and suffered panic attacks.   Dkt. 1 ¶s18, 19.   She was later allowed to work from home, but not on the basis of her reasonable accommodation request.   Dkt. 1 ¶ 16.

23.     "The initial estimate of reasonable attorneys fees is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544 (1984); *Wales v. Jack M. Berry, Inc.,*

---

[2] Prior to this policy, many cases were settled at the administrative stage.

192 F. Supp.2d 1313, 1317 (M.D. Fla. 2001). The declaration of J. Robert McCormack (Exhibit G) provides that the reasonable hourly rate of: $550 per hour for Joseph Magri; $200 per hour for Gerard Roble; $350 per hour for Sean McFadden; $125 per hour for Meagan Blackshear Ross-Culpepper; and $150 per hour for Angela Merkle.  Given their hours this results in fees of $101,035 for Joseph Magri, $13,720 for Gerard Roble, $4,130 for Sean McFadden, $4,462.50 for Meagan Ross-Culpepper, and $18,225 for Angela Merkle.  This totals $141,572.50.

24.     The rates for Joseph Magri should be used for the reasons discussed below, including the results obtained.  However, the rate is clearly warranted independent of those reasons because Mr. Magri had uncommon qualifications to successfully handle a case such as the instant one.  At the beginning of his career, he worked for a large law firm with clients with a national expanse.  He engaged in civil litigation, which included major litigation with complicated legal issues.  Unlike many civil attorneys at big firms, Mr. Magri left this firm and became an Assistant U.S. Attorney in the Criminal Division of the U.S. Attorney's Office for the Middle District of Florida located in Tampa, Florida.  Mr. Magri also became the first Assistant U.S. Attorney and, for a while, the acting U.S. Attorney. He helped supervise that location, as well as the Orlando, Jacksonville and Ft. Myers' offices.  He was allowed to try a rare mutiny-murder case which happened in the Atlantic Ocean off Cocoa Beach, in the Orlando Courthouse. While serving in the U.S. Attorney's office, he not only obtained considerable trial experience, including dealing with evidentiary issues, he also became familiar with issues relating to government, government agencies and the conduct of government agencies.  Following this experience, he joined the retired U. S. Attorney in private practice at Merkle & Magri, P.A. There he obtained additional experience, almost exclusively in civil litigation, which also included additional trial experience as well as experience handling employment and civil rights cases.  Since 1977 he has over 40 years

11

of practice and therefore has considerable legal experience in general. See Exhibits A and A-1. He is well trained and experienced with not only complex civil litigation, but also actual federal trial experience, and he is well versed in the workings of the government and government agencies as the result of working for the government and having handled federal employment litigation.

25.     Under the plaintiff's fee agreements for federal employees, costs are always handled the same.   However, the hourly rate charged can vary depending on the case and occasionally the plaintiff's circumstances, but it is always lower for the client than the rate this firm would receive in the event of a settlement prior to trial. Exhibit I. The settlement rate is always also well lower than our reasonable hourly rate to help generate settlements beneficial to the client. In this case the pre-trial settlement rate for the client was $300.00 for Joseph Magri, $130.00 for Gerard Roble, $235 for Sean McFadden, $95 for Meagan Blackshear Ross-Culpepper, and $85 for Angela Merkle. The hourly rate structure under our fee agreement is designed to help federal employees afford our legal services. The employee is charged a lower sum or "capped" rate regardless of outcome. If the case settles at an earlier stage, the agreement envisions a higher rate designed to capture some more, but not all, of our reasonable hourly rate. All of this was conveyed to the Agency during settlement discussions during the administrative stage and during mediation in Federal Court along with the additional fact that if successful at trial, fees would increase to our reasonable hourly rate and the trial preparation and trial hours would be much higher.   However, consistent with the Agency's settlement policy, there was no settlement. The Defendant gambled on summary judgment.   To the extent we proceed to a verdict after trial or where a court or judge decides the fees, the client agrees in paragraph 7 that the attorneys can receive their full reasonable hourly rate or more.   Paragraph 7 expressly recognizes that the court can award fees in excess of any prior listed fee.   We do this because our experience has shown that it normally creates

incentives in favor of earlier settlement and avoids the significant costs of trial preparation and trial or, as here, added fees and costs for litigating just the fees, thus helping our client while ensuring a reasonable rate if the case proceeds to trial or fees need to be resolved in whole or in part by a judge.[3] Moreover, the reasonable fee required at this stage under the Rehabilitation Act or *Home Depot* and the contract is not based on the parties' fee agreement, but the prevailing market rates in the relevant community. *Blum*, 465 U.S. 895, 104 S.Ct. at 1547 (reasonable fees "are to be calculated according to prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."). The relevant community is the community in which the case was filed. *Collens v. Georgia Dept. of Transportation,* 29 F.3d 1489. 1494 (11th Cir. 1994). This was explained to the defendant's counsel. <u>In all prior instances in which there was a settlement the defendant has settled without proceeding to court under paragraph 7.</u>

26.     Therefore, we are currently in the "reasonable" fee phase because the law and the settlement agreement requiring the Court to decide the "reasonable" fees and costs is applicable to the case. The Defendant has agreed to pay a reasonable fee and, as mentioned, a reasonable fee is not based on the parties' fee agreement, but the prevailing market rates in the relevant community. *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547 (reasonable fees "are to be calculated according to prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."*); Home* Depot at p1076-1091 (lodestar method for reasonable fees which includes market rates). For example, in a 2007 religious discrimination case, *Krop v. R. James Nicholson,* Case No. 8:06-cv-157, the jury verdict was for $300,000 and Judge Scriven

---

[3] Our fee agreement contains a "Client Rights" attachment taken from Florida's standard contingency fee agreements. See Exhibit I.

awarded fees in that case of $300 per hour for Joseph Magri, $200 per hour for Gerard Roble and $70 per hour for Angela Merkle even though the fee agreement with the plaintiff provided for lower fees in the event of settlement.  In 2009 a jury awarded $3.736 million in *Cote v. Shinseki,* Case No. 8:07-cv-01524-T-TBM, (reduced to #1,199,018.29 after statutory cap applied).  The trial Judge, Thomas B. McCoun, III, awarded hourly rates of $350 to Magri and Meythaler and $200 for Gerard Roble, $130 for Kyle Lindskog. $85 for Angela Merkle and $40 for Branden Henderson even though the fee agreement provided for a lower sum if there was a settlement. Case law and the language of paragraph 7 allowed for the court to not be bound by settlement amounts when determining an award of reasonable fees and costs. After the plaintiffs prevailed on the only portion of the case that the government appealed in *Gowski v. Peake,* 682 F.3d 1299 (11th Cir. 2012), Plaintiffs had requested the same rates Judge McCoun awarded in 2009. While Judge McCoun awarded fees as requested he noted: "Plaintiffs' counsel rendered exemplary services to these plaintiffs. This litigation, which has extended over years, required competent and skilled legal counsel possessed of considerable perseverance and dedication;. . . These rates are now at the lower end of what is reasonable for this type of trial work." A higher "reasonable" fee is even more clearly appropriate now based on our current practice and experience.

27.     As it relates to our experience and qualifications it should be noted that as a result of the cases up to *Gowski,* federal employees came to the firm in ever increasing numbers.  Federal employee employment cases have since become the predominant portion of our practice and that practice has become national in scope. We have handled Federal employment matters involving for example, the Department of Justice's Office of Professional Responsibility (OPR), the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Prisons (BOP) and were paid by DOJ to successfully represent an Assistant United States Attorney

14

who had difficulty in the Eleventh Circuit. See *U.S. v. Sigma Intern. Inc.,* 300 F.3d 1278 (11th Cir. 2002). We have also handled federal employment matters concerning the Environmental Protection Agency (EPA), the National Oceanographic and Atmospheric Agency (NOAA), the Department of Veterans Affairs (VA) (representing doctors, nurses, other medical, legal and administrative staff including upper level management, and employees in the VA's Office of Resolution Management), the United States Postal Service and the EEOC. We have also met with Congressional staff and employees at the Office of Inspector General (OIG) in several areas in which we practice. We have also been involved in State Judicial Qualifications proceedings.

28.     Along with the growth in the volume of these claims we have expanded our cases over the country. We currently are, or have, represented federal employees in Washington, D.C., New York, Illinois, Ohio, California, Colorado, Louisiana, North Carolina, Texas, Virginia and Tennessee.  We attempt to screen our cases and have turned down representation in several other states and Florida.  Within Florida, we have handled employment cases for employees in Tampa, Orlando, Jacksonville, St. Petersburg, Sarasota, Fort Myers, Naples, West Palm Beach, and Miami as well as in satellite facilities for the agencies in these areas. We have also represented federal employees in whistleblower cases where the employees were identified, and put their reputation and jobs on the line when complaining that their agency endangered public health and safety, engaged in gross and arbitrary mismanagement, fraud, waste and abuse and other violations of the Whistleblower Protection Act which were reported to the OIG, the Office of Special Counsel (OSC) and ultimately the Merit Systems Protection Board (MSPB). We have also represented veterans under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) and other statutes. Given our background and fee structure, cases that get past MSJ often settle as opposed to going to trial. Sixteen EEO cases have been successfully settled in the

15

Middle District of Florida for amounts predominantly in the six or seven figures, and/or, as in this case, with non-monetary terms important to the employees.

29.    Our firm has handled employment cases with theories of first impression.   For example, *Gowski v. Peake, supra* was the first case in which the Eleventh Circuit sanctioned a retaliatory hostile work environment claim and accepted the relationship between discrete acts and other acts comprising such a claim.   In *Babb v. Wilkie,* we currently have a federal employee case which has been briefed and on January 15, 2020 was argued before the U.S. Supreme Court.   If successful, that case will have a profound impact on federal employee ADEA claims.   Moreover, it involves interpretation of statutory language which is identical to the statutory language in Title VII.   Therefore, the decision could impact all federal employee Title VII decisions. We currently have a petition for certiorari before the Supreme Court in a USERRA case, *Hollingsworth v. Department of Veterans Affairs. Babb* and *Hollingsworth* involve conflicts amongst Circuit Courts of Appeals.

30.    A reasonable fee should also consider the results obtained. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554-6 (2010). In fact, in *Hensley,* 461 U.S. at 435, 103 S. Ct. at 1940, the Supreme Court stated that "indeed in some cases of exceptional success an enhanced award may be justified."   Normally, however, the results will be reflected in the hourly rate.   It is widely known that discrimination cases are lost by plaintiffs far more than they are won. In *City of Riverside,* 477 U.S. at 571-572, 106 S.Ct. at 2693, the Supreme Court recognized the advancement of the public interest as an appropriate element in determining a reasonable fee.   The Supreme noted with approval the lower court's determination that (*Id*):

> Counsel for plaintiffs . . .served the public interest by vindicating important
> constitutional rights.   Defendants had engaged in lawless, unconstitutional conduct,

> and the litigation of plaintiffs' case was necessary to remedy defendant's misconduct. . . The amount of time expended by plaintiffs' counsel in conducting this litigation was clearly reasonable and necessary to serve the public interest as well as the interests of plaintiffs in the vindication of their constitutional rights."

The Supreme Court also noted that the District Court found, in determining attorney fees, that "important social benefits" are secured when a lawsuit, such as the instant case, will help stop improper institutional behavior.  The Supreme Court noted with approval that the trial court had observed the following (477 U.S. at 574-575, 106 S.Ct. ay 2694):

>  The institutional behavior involved here . . .had to be stopped and . . . nothing short of having a lawsuit like this would have stopped it. . .prop-er motivation which appeared as a result of all of this seemed to me to have pervaded a very broad segment of police officers in the department.

31.     In this case 9 witnesses testified at depositions during administrative proceedings. While there was some overlap, 24 witnesses were identified on the parties' respective witness lists. Over 1600 pages of documents were exchanged during discovery. The Plaintiff vindicated her right to engage in protected activity and to be recognized as a qualified person with a disability. Her considerable efforts will clearly benefit many other employees. The persons denying her her rights were in the Regional Counsel's Office. This is, after all, our motivation for doing federal employee cases on the basis we do them and that of our client in this case.

32.     In deciding a reasonable fee, it should also be recognized that there is a limited number of attorneys who handle federal employee matters, like we do, in Florida.  I am unaware of others in the State who practice to the extent we do.  People who call in often say they cannot find other attorneys who do federal employment cases. Exhibit H.  While it is difficult to search cases, we have asked our assistant to attempt to use the court's computer records to search for federal discrimination cases against three agencies, the VA, DOJ, and Post Office in the Middle

District of Florida  That search was designed to cover the period from January 1, 2010 to January 17, 2020.  It is attached to Exhibit H which is a declaration explaining the search.  We found what seems to be 102 cases involving discrimination or civil rights related to federal employment.  Of those, 41 involved pro se plaintiffs.  Plaintiffs had attorneys in 61 cases. Including this case, we have been the attorneys in 27 cases involving 45 employees.  Five other attorneys had more than one case, including Mr. McCormack who now solely represents private employers in a large international law firm with 53 offices including Tampa and Miami. I am not aware of any other attorneys that have had court awarded fees in federal employment cases in the Middle or Southern District in the last 10 years. We have also reviewed the cases in the Southern District of Florida. We found what seems to be 36 cases involving discrimination or civil rights related to federal employment.  Of those, 25 involved pro se plaintiffs.  Plaintiffs had attorneys in 11 cases, including two of our cases, one of which was settled. Our firm is the only firm to have prevailed at trial (2019). No other attorney is on more than one case. Twenty-three cases were dismissed or transferred or resolved by motion and four settled, including one of our clients. There were three non-reportable closings, one directed verdict and four are open.

33.     We have also checked the non-federal discrimination cases for fee records.  None of the attorneys seem to have the level of experience we have.  The highest awarded hourly rate appears to be $450.00 to an attorney with 30 years' experience. A paralegal received $135.00. See also McCormack declaration, Exhibit G. The justification for those fees would bring our rate well over $500.00.  Our experience is much longer, and while it might be argued that it makes us eligible for the highly reported "boomer" expression made by Justice John Roberts on January 15, 2020, that came at an oral argument in one of our cases which we were able to get before the Supreme

Court.  Therefore, that experience did not hurt us in that case and should not in this one. To assist in finding a fair number, we believe the Laffey Matrix used by the United States Attorney's Office in Washington, D.C. to award attorneys fees should be "considered" in this case.  See Ex. L.   It is obviously not controlling because it is not from this locality.   However, it can be of assistance. That matrix would result in fees of $613 for Joseph Magri, $550 for Gerard Roble, between $358 and $417 for Sean McFadden, $166 for Meagan Ross Culpepper, and $166 for Angela Merkle. We also recognize that under Eleventh Circuit precedent national rates should not be applied if there are attorneys practicing in this law in the local area.  In fact, there appear to be few attorneys practicing federal employment law in this locale in Federal Court. Given our skill and specialized experience we believe an appropriate rate would be higher at least for Mr. Magri and Ms. Merkle. Indeed, we believe rates of $550, and $150, respectively should be utilized given our experience and the scope of our practice. We request $200 per hour for Gerard Roble, $350 per hour for Sean McFadden and $125 per hour for Meagan Ross-Culpepper. See Exhibit A ¶ 14. Paralegals have been awarded $150 per hour in the Southern District and $160 per hour in the Northern District.

34.     As for the hours, they are broken down in the attached bills, Exhibit B.   The intransigence of the Defendant made us spend more time and go to Federal Court.

35.     **Costs.** In *Wales,* 192 F.2d at 1329 the court recognized that non-statutory costs can be subsumed within reasonable attorneys fees and include such expenses as "reimbursement for travel, meals, lodging, photocopying, long distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment." See also, *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1191-1192 (11th Cir. 1983): *Mallory v. Harkness,* 923 F.Supp. 1546, 1557-1558 (S.D. Fla. 1996) (Title VII); *Moffett v. Gene B. Glick Co.*

19

*Inc.*, 621 F.Supp. 244, 290 (D.C. Ind. 1985); *Certain v. Potter,* 330 F. Supp.2d 576, 591-592 (M.D. N.C. 2004); *Laffey v. Northwest Airlines, Inc.,*  746 F.2d 4, 30 (D.C. Cir. 1994). In the present case a review of Exhibits B and C show that costs total $8,933.48.  In any event the itemization portion of the invoices captures these and other costs recoverable either as court costs or reasonable attorneys fees.  The date of entry corresponds to Exhibit B.

36.    **Post Settlement Fees and Costs.** Attorney's fees incurred in  litigating the fee issues and post trial motions are recoverable under 29 U.S.C. § 794a and 42 U.S.C. § 2000e-5(K). *See, e.g., Sassaman v. Hart City Toyota,* 879 F.Supp. 901, 917 (N.D. Ind. 1994), 916-917 and cases cited therein. While the undersigned believes that law should apply because we are deciding such fees in a discrimination case, the law would be the same under a contractual fee shifting settlement agreement.  *Home Depot supra* at 1903. The current motion runs through December 31, 2019. Attorneys fees for litigating fee issues and post trial motions will be submitted once known.

WHEREFORE, Plaintiff presently requests $141,572.50 in attorney's and paralegal fees and $8,933.48 in costs.

Respectfully submitted,

*/s/ Joseph D. Magri*
JOSEPH D. MAGRI
Florida Bar No. 0814490
Merkle & Magri, P.A.
5601 Mariner Street, Suite 400
Tampa, Florida 33609
Tel: (813) 281-9000
Fax: (813) 281-2223
Attorney for Plaintiff
Email:  jmagri@merklemagri.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 27, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to the following CM/ECF participants:

Charles E. Peeler
U.S. Attorney for the Middle District of Georgia
Lance Simon
Special Assistant United States Attorney
United States Attorney's Office
Middle District of Georgia
P.O. Box 1702
Macon, Ga. 31202-1702
Telephone: (478) 621-2663
Email: lance.simon@usdoj.gov

/s/ Joseph D. Magri
Joseph D. Magri