UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CHERYL GRIFFITH,

     Plaintiff,

v.                                                                    Case No. 8:18-cv-432-T-CPT

ROBERT WILKIE,
Secretary, U.S. Department
of Veterans Affairs,

     Defendant.
_____/


**O R D E R**

Before the Court are: (1) Plaintiff Cheryl Griffith's *Motion for Attorneys Fees and Costs* (Doc. 31), the response thereto filed by Defendant Robert Wilkie, Secretary of the United States Department of Veterans Affairs (VA) (Doc. 34), and Griffith's reply (Doc. 39); as well as (2) Griffith's *Supplemental Motion for Attorneys Fees and Costs* (Doc. 40) and the VA's response in opposition (Doc. 43).   For the reasons discussed below, Griffith's first motion is granted in part and denied in part, and her second motion is denied.

I.

Griffith initiated this action against the VA in February 2018 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and section 501 of the

Rehabilitation Act of 1973, 29 U.S.C. § 791, asserting four counts: (1) failure to reasonably accommodate her disability; (2) racial discrimination; (3) retaliation; and (4) a hostile work environment.   (Doc. 1).   The parties attempted to resolve the matter through mediation in May 2019 but reached an impasse.   (Doc. 19).

The VA thereafter moved for summary judgment (Doc. 20), which led Griffith to voluntarily drop her race-based discrimination and retaliation claims.   (Doc. 21). The Court granted the VA's summary judgment motion as to the two dropped counts but denied the VA's motion on the remaining two claims.   (Doc. 22).

The parties ultimately settled their dispute in December 2019.   (Doc. 29).   As part of that settlement, the VA agreed to (1) pay Griffith $10,000, (2) allow her to continue teleworking, and (3) reimburse her for her "costs and attorney's fees in the amount determined reasonable by order of the United States District Court."   (Doc. 29-3 at 1-2).   The VA, however, did not admit any liability or concede that Griffith was the "prevailing party."   (Doc. 29-3; Doc. 34).   As requested by the parties, the Court entered an Order retaining jurisdiction of the cost and fee matter.   (Doc. 30).

Citing 42 U.S.C. § 2000e-5(k) and the terms of the parties' settlement agreement, Griffith timely moved for an award of $141,572.50 in attorneys' fees and $8,933.48 in costs.   (Doc. 31).   In response, the VA advised that, while it did not object to Griffith's request for costs, her sought-after fee award should be substantially reduced to no more than $58,893.   (Doc. 34).   With the Court's permission, Griffith filed a reply to the VA's response.   (Doc. 39).

2

Several months later, Griffith filed her supplemental motion requesting additional attorneys' fees and costs, which she claims were incurred in seeking her original fee award.  (Doc. 40).  The VA objected to Griffith's supplemental motion as both untimely and meritless.  (Doc. 43).  Griffith's counsel subsequently filed three notices citing additional authority, the last of which was filed on September 25, 2020.  (Docs. 44-46).  The matter is now ripe for resolution.

II.

The Court begins with Griffith's first motion for an award of reasonable attorneys' fees.  (Doc. 31).  What constitutes a reasonable fee is a matter within the Court's sound discretion.  *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).   In determining reasonableness, federal courts employ the "lodestar" method.  *Id.* at 1299; *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168, 1185 (S.D. Fla. 2012) ("The lodestar method of calculating attorney's fees has become the 'guiding light' of the federal courts' jurisprudence for calculating a reasonable attorney's fee.") (quoting *Perdue v. Kenny A.*, 559 U.S. 542 (2010)).

The "lodestar" amount is calculated by multiplying the reasonable hours spent by a reasonable hourly rate.  *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 686 (11th Cir. 2011) (per curiam) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)); *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).   In reaching the lodestar, courts may look to the factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).   *In re Home Depot Inc.*, 931

3

F.3d 1065, 1090-91 (11th Cir. 2019) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008)).[1]

Fee applicants bear the burden of tendering satisfactory evidence that demonstrates the reasonableness of both the hourly rates requested and the amount of time expended. *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437); *Maciejczyk v. You Fit, Inc.*, 2013 WL 7186419, at *1 (M.D. Fla. Dec. 12, 2013), *report and recommendation adopted*, 2014 WL 585067 (M.D. Fla. Feb. 12, 2014). A party opposing a fee application, however, must also submit specific and "reasonably precise" objections and proof. *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301); *see also Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (per curiam) ("[T]he law in this circuit commands that both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude.").

Once the lodestar has been determined, there is a "strong presumption" that it constitutes "the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350 (citation omitted). Nonetheless, it "can be adjusted upward or downward based on other considerations, including the results obtained by the attorneys for their client."

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19. As the Eleventh Circuit recently explained, however, these factors are "almost always subsumed in the lodestar." *Home Depot*, 931 F.3d at 1091.

*Walker v. Iron Sushi LLC*, 752 F. App'x 910, 913 (11th Cir. 2018) (per curiam) (citing *Hensley*, 461 U.S. at 434).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

On appeal, an award of attorneys' fees and costs will be upheld unless it constitutes an abuse of discretion. *Perez v. Carey Intern., Inc.*, 373 F. App'x 907, 909-10 (11th Cir. 2010) (per curiam) (citing *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006)).

In this case, Griffith was represented by the law firm of Merkle & Magri, P.A. (M&M) before both the Court and the Equal Employment Opportunity Commission (EEOC). (Doc. 31 at 4-5; Doc. 31-3). In support of her fee request for M&M's efforts in these two fora, Griffith submits the declarations of several of the lawyers and paralegals involved with her case (Docs. 31-2; 31-5; 31-6; 31-7), M&M's billing records (Doc. 31-3), Griffith's fee agreement with the law firm (Doc. 31-10), and a declaration authored by an M&M legal assistant attesting to the range of federal employment discrimination cases filed in the Middle and Southern Districts of Florida (Doc. 31-9). In addition, Griffith offers the declaration of J. Robert McCormack, an independent attorney who reviewed the case file and who asserts that the sought-after fees are reasonable. (Doc. 31-8).

5

The hourly rates, hours expended, and total fee amount Griffith requests are summarized as follows:

| Timekeeper/Title | Hourly Rate | Hours Expended | Fees |
|---|---|---|---|
| Joseph Magri, Partner | $550 | 183.7 | $101,035.00 |
| Sean McFadden, Associate | $350 | 11.8 | $4,130.00 |
| Gerard Roble, Attorney | $200 | 68.6 | $13,720.00 |
| Meagan Ross-Culpepper, Paralegal | $125 | 35.7 | $4,462.50 |
| Angela Merkle, Paralegal | $150 | 121.5 | $18,225.00 |
| TOTAL | | 421.3 | $141,572.50 |

(Doc. 31 at 4-5, 11; Doc. 31-3).

As alluded to above, the VA disputes the reasonableness of the hourly rates Griffith seeks, arguing that she should be limited to those rates contemplated in her fee agreement with M&M. (Doc. 34). As reflected in the firm's billing records and as Griffith acknowledges, the rates M&M charged her in this case are far lower than those she now requests. Those contractual rates are $300 for partner Joseph Magri, $235 for associate Sean McFadden, $130 for attorney Gerard Roble, $95 for paralegal Meagan Blackshear Ross-Culpepper, and $85 for paralegal Angela Merkle. And, although the VA does not specifically object to the number of hours M&M expended on this case, it asks that the Court apply two across-the-board reductions to the lodestar amount. *Id.* The Court addresses each of these issues in turn, beginning with the hourly rates sought by M&M.

6

### A.   Reasonable Hourly Rates

It is well settled that a "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth*, 97 F.3d at 1396 (quoting *Norman*, 836 F.2d at 1299). The relevant legal community "for purposes of determining the reasonable hourly rate for an attorney's service is the place where the case is filed." *Barnes*, 168 F.3d at 437 (quotation and citation omitted).

In determining reasonable hourly rates, the court is not tethered to the parties' submissions. Instead, because the court "'is itself an expert on the question [of reasonable hourly rates, it] may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Norman*, 836 F.2d at 1303 (quotation and citations omitted).

One of the factors the Court may take into account in determining a reasonable hourly rate is what a lawyer charges his or her fee-paying clients. Indeed, as the Eleventh Circuit has explained, such a figure "is powerful, and perhaps the best, evidence of [a lawyer's] market rate; that is most likely to be what [the lawyer] is paid as 'determined by supply and demand.'" *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (per curiam) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) and citing *Norman*, 836 F.2d at 1299). As a result, while "not necessarily determinative," the agreed-upon billing rate between an attorney and his or her client

is considered to be "a strong indication of a reasonable rate." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001) (per curiam).

In *Tire Kingdom*, the Eleventh Circuit addressed the issue of whether the district court erred in awarding attorneys' fees based on an hourly rate that exceeded the hourly rate set forth in the contract between the defendants and their counsel. *Id.* at 1336. In resolving this issue, the Court stated that it was mindful of the admonition made by the former Fifth Circuit in *Johnson* that "[i]n no event . . . should [a] litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to [that] amount." *Id.* at 1337 (quoting *Johnson*, 488 F.2d at 718). The Court also recognized, however, that the Supreme Court has explained since *Johnson* that, "at least in the context of contingent fee arrangements, a fee agreement should not place a strict limit on a fee award." *Id.* (citing *Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989) ("The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.")). Instead, as the court in *Tire Kingdom* observed, the Supreme Court has made clear that "the reasonable hourly rate should be determined based on the reasonable worth of services rendered, so long as the rate results in no windfall for the prevailing party." *Id.* Against this backdrop, the court in *Tire Kingdom* found no abuse of discretion in the trial court's use of an hourly rate that exceeded the contractual rate where the "overall difference between the negotiated rate and the [rate awarded was] less than $1000." *Id.*

Since *Tire Kingdom*, district courts in this circuit faced with a disparity between a litigant's contractual fee rate with counsel and a higher purportedly reasonable rate have taken varying approaches.   *See, e.g., Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 2019 WL 3412159, at *4 (S.D. Fla. June 17, 2019), *report and recommendation adopted,* 2019 WL 5260154 (S.D. Fla. Aug. 28, 2019) (declining to extend *Tire Kingdom* to allow for an award of a higher hourly rate where "the difference between the agreed-upon rates and the requested rates [was] hundreds of thousands of dollars"); *Regions Bank v. Kaplan*, 2018 WL 4403828, at *10-11 (M.D. Fla. June 25, 2018), *report and recommendation adopted*, 2019 WL 1417851 (M.D. Fla. Mar. 29, 2019) (finding that the court is "free to award a higher fee than the one the firm actually charged" the client but nonetheless concluding that "the reasonable hourly rates approximate those actually paid"); *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, No. 8:13-cv-1408-T-TBM (M.D. Fla. Sept. 6, 2016) (awarding contractual rates the attorneys charged their client rather than their higher "customary rates," despite the fact that the requested higher rates were reasonable), *appeal dismissed*, No. 16-16415 (11th Cir. Dec. 6, 2016); *Fielder v. Shinseki*, No. 8:07-cv-1524-T-TBM (M.D. Fla. Apr. 26, 2010) (awarding hourly rates higher than the contractual rates following jury verdict for plaintiff); *City of Huntsville v. Proliance Energy, LLC*, 2005 WL 8158017, at *1 (N.D. Ala. July 1, 2005) (authorizing hourly rates above the contract amount and reasoning "that, by awarding the plaintiff fees based upon a market rate, it will not run afoul of *Tire Kingdom*'s admonition against bestowing a 'windfall for the prevailing party' because the market rate is, per se, reasonable and therefore not a windfall").

9

In this case, while the Court is not necessarily bound by the contractual rates M&M charged Griffith, the circumstances presented persuade it that such rates are appropriate and proper.   To begin, these rates are within the bounds of reasonableness for this legal community based upon the Court's knowledge of and experience in federal employment cases like this one.   *Norman*, 836 F.2d at 1303.

Furthermore, unlike the situation in *Tire Kingdom*, the difference here between the fee amount calculated using the agreed-upon rates and the fee amount based upon the rates sought by M&M is more than $60,000, which equates to roughly a 75% increase.   This is not surprising because the rates that Griffith now contends are reasonable—$550 per hour for Joseph Magri, $350 per hour for Sean McFadden, $200 per hour for Gerard Roble, $125 per hour for Meagan Blackshear Ross-Culpepper, and $150 per hour for Angela Merkle—represent a dramatic escalation of the contractual rates for these individuals.   Indeed, as the VA observes, the rates Griffith requests would result in increases in the contractual rates of more than 80% for Magri; approximately 50% for McFadden and Roble; more than 30% for Ross-Culpepper; and about 75% for Merkle.   (Doc. 34 at 6).

While the Court recognizes that Griffith's fee agreement with M&M contemplates the potential for a court-ordered higher amount providing that "[t]he firm is entitled to any attorney fees awarded or collected in excess of this fee agreement with [the] client" (Doc. 31-10 at 2), such a substantial inflation of the hourly rates is unwarranted.   Most striking is the $550 per hour rate requested by Magri, which significantly exceeds the rates typically charged or awarded in this legal community

for employment litigation.   *See, e.g., Gonzalez v. Rainforest Cafe, Inc.*, 2018 WL 3635110, at *3-5 (M.D. Fla. Apr. 4, 2018), *report and recommendation adopted*, 2018 WL 3635085 (M.D. Fla. Apr. 19, 2018) (declining to award requested rate of $550 per hour and instead finding $325 per hour to be reasonable in a Family Medical Leave Act and reasonable accommodation of pregnancy case).   Indeed, Griffith cites no case in which a $550 per hour rate has been approved for Magri (or any other attorney) in this legal community or, for that matter, in the entire District.[2]   The closest Griffith comes is in McCormack's Declaration, where McCormack cites recent employment cases authorizing hourly rates of $450 for an attorney with more than thirty years' experience and $425 for an attorney with nearly fifteen years' experience.   (Doc. 31-8 at 5); *see also* (Doc. 31 at 18) (conceding that "[t]he highest awarded hourly rate appears to be $450.00 to an attorney with 30 years' experience").   Although Magri's skill, experience, and reputation are impressive (Doc. 31 at 18), Griffith's submissions simply do not support a finding that $550 is a proper market rate in the circumstances present in this case.

The requested hourly rates for the remaining attorneys—McFadden and Roble at $350 and $200, respectively—are less concerning, but are still too high, particularly given that they represent roughly a 50% hike of the agreed-upon rates.   The same can

---

[2] Griffith's supplemental authority (Docs. 44-46), in which she cites *Horne v. Barr*, No. 12-cv-23507 (S.D. Fla.), does not dictate a different conclusion.   The fees in that out-of-district case were awarded to a successful plaintiff following a jury trial, and the Court does not find that the court's order or the parties' stipulation in that action have persuasive value here.

be said of the rates sought for the two paralegals, which likewise substantially exceed the rates charged to Griffith.

In sum, taking into account the *Johnson* factors, the Court's own knowledge and experience in handling federal employment cases like this one, and the record before it, the Court finds no reason to authorize rates over and above the contractual rates. As Griffith tacitly acknowledges, these rates are designed to induce pretrial settlements (Doc. 31 at 12), and that is what occurred here. Although the parties did not resolve her case as quickly as Griffith might have liked, it did settle in advance of the scheduled trial. And, despite seeking judicial resolution of the fee amount to be awarded as part of the parties' settlement, the pretrial settlement rates remain applicable and—in the Court's view—proper and reasonable. Furthermore, as noted above, utilizing the contractual rates also prevents a windfall. Accordingly, the Court awards the contracted hourly rates of $300 for Joseph Magri, $235 for Sean McFadden, $130 for Gerard Roble, $95 for Meagan Blackshear Ross-Culpepper, and $85 for Angela Merkle.

### B.    *Reasonable Hours Expended*

With regard to the second half of the lodestar equation, it is well settled that "[f]ee applicants are required to exercise 'billing judgment'" in tabulating the reasonable hours spent litigating a matter. *Maciejczyk*, 2013 WL 7186419, at *2 (quoting *Barnes*, 168 F.3d at 428). This "means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary [hours], which . . . would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill,*

12

*reputation or experience of counsel.*"   *Barnes*, 168 F.3d at 428 (quotation and citations omitted).   And, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them."   *Id.*   As the Eleventh Circuit has observed in this regard, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is" granted.   *Id.*   That said, the trial courts "need not, and indeed should not, become green-eyeshade accountants."   *Fox v. Vice*, 563 U.S. 826, 838 (2011).   "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."   *Id.*

As noted by Griffith in her motion and as reflected in the eighty-five pages of M&M's billing records she submits, the firm began representing Griffith in late 2014 in connection with the EEOC administrative process.   (Doc. 31-3).   During that time frame, Griffith's attorneys and their paralegals spent 237 hours in pursuing Griffith's administrative claims (109.8 hours by Magri, 10 hours by McFadden, 19.6 hours by Roble, 35.7 hours by Ross-Culpepper, and 61.9 hours by Merkle).   (Doc. 31 at 4-5; Doc. 31-3).   When the EEOC proceeding did not result in a resolution of her claims, Griffith filed her complaint in this action in February 2018.   During the ensuing twenty-two months leading up to the parties' settlement, M&M's attorneys and paralegals expended 184.3 hours litigating the case in federal court (73.9 hours by Magri, 1.8 hours by McFadden, 49 hours by Roble, and 59.6 hours by Merkle).   *Id.*

In assessing the reasonableness of these hours, the Court notes as an initial matter that there is no dispute that Griffith is entitled to recoup her reasonable fees for both the EEOC proceedings and this federal action.   (Docs. 31, 34); *see also Mertz v. Marsh*, 786 F.2d 1578, 1580 (11th Cir. 1986) (citing *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980) for the proposition that "the word 'proceedings' include[s] state and federal, administrative and procedural proceedings" and noting that the Supreme Court "upheld an award of attorney's fees for services rendered in state administrative proceedings in connection with an EEO charge").

In winding its way through both the EEOC process and the federal system, this matter spanned more than five years, required considerable discovery and motion practice at both levels, and entailed counsel's participation in multiple EEOC hearings, an EEOC settlement conference, a formal mediation in the federal action, and, finally, a series of informal settlement negotiations.   Upon review of the billing records (Doc. 31-3), the Court finds that the number of hours (totaling 421.3 hours) M&M devoted to pursuing Griffith's claims over the course this roughly five-year period—while substantial—is reasonable.   The fact that the VA does not object to the reasonableness of the hours expended by M&M supports this conclusion.

## C.   *Adjustment to Lodestar*

As noted above, the VA asks that the Court reduce the lodestar in two respects. First, the VA submits that Griffith's fees should be decreased by at least twenty-five percent for the time period up to and including the date (i.e., June 14, 2019) on which Griffith filed her response to the VA's summary judgment motion (Doc. 21), given

14

that Griffith voluntarily dismissed two of her four claims in response to the VA's motion.   (Doc. 34 at 8-13).   Second, the VA requests that Griffith's fees attributable to the parties' settlement negotiations, which occurred between August 22 and December 27, 2019, be halved to account for Magri's alleged misrepresentation that he charged a lower hourly rate for settlement talks.   *Id.* at 13-14.   Griffith opposes both reductions.   (Doc. 39).

Beginning with the VA's latter request, the Court finds no reason to pare down the lodestar amount for the settlement negotiations.   As discussed above, the hourly rates charged by M&M already reflect the "reduced rates" designed by the firm to facilitate settlement agreements.[3]   Furthermore, the Court does not find, nor does the VA argue, that the contractual rates or the time spent by M&M to negotiate and finalize the settlement agreement are unreasonable.   To the contrary, during the approximately four-month span dedicated to these efforts, the firm accrued only $6,241.50 in billable time based upon the agreed-upon rates it charged Griffith.

The Court is likewise unpersuaded by the VA's argument seeking at least a quarter reduction of the fees through June 14, 2019.   The gist of that argument is that Griffith is not the prevailing party in this case, that she is therefore entitled to reasonable fees only as a result of the parties' settlement agreement, and that she should not be compensated for the two claims she dropped at the summary judgment

---

[3] To the extent the VA claims that Magri agreed to *further* reduce his rates from the contract amounts and should not now be permitted to benefit from this alleged "misrepresentation," the Court does not find this argument sufficiently supported by the evidence submitted.

15

stage.   (Doc. 34 at 8).   In support of this contention, the VA relies on several cases in which courts reduced attorneys' fees predicated upon fee-shifting statutes because the party prevailed on some claims but not others.   (Doc. 34 at 8-14) (citing *M.H. v. Comm'r of the Ga. Dep't of Cmty. Health*, 656 F. App'x 458 (11th Cir. 2016) (fee-shifting under 42 U.S.C. § 1988); *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712 (11th Cir. 2002) (fee-shifting under 42 U.S.C. § 2000e-5(k)); *Goodridge v. Astrue*, 2011 WL 13173911 (N.D. Ga. Aug. 11, 2011) (same); *Johnson v. Potter*, 2011 WL 672347 (M.D. Fla. Feb. 17, 2011) (same); *Davenport v. City of Columbus, Ga.*, 2009 WL 235253 (M.D. Ga. Jan. 30, 2009) (same)).

Griffith counters that the VA's argument conflicts with the Supreme Court's opinion in *Hensley* and the Eleventh Circuit's decision in *In re Home Depot*.   In *Hensley*, the Supreme Court examined attorney's fees under a fee-shifting statute, 42 U.S.C. § 1988, and instructed that, given the interrelated nature of civil rights claims and legal theories, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."   461 U.S. at 435.   Thus, the Court directed that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."   *Id*.

In *Home Depot*, the Eleventh Circuit was called upon to resolve a dispute involving the amount of attorney's fees to be paid under a contractual agreement, rather than a fee shifting statute.   931 F.3d at 1081.   The Eleventh Circuit reasoned

16

that because the fees were to be "awarded pursuant to a contract, not a statute, and [because] there [wa]s no prevailing-party limitation in the settlement agreement . . . the prevailing-party limitation d[id] not apply, and the District Court did not need to deduct time spent on discrete and unsuccessful claims." *Id.* at 1087.  The Court found that the issue instead was "simply whether the time spent was reasonable, which [wa]s the standard set in the agreement." *Id.*

The Court finds that Griffith has the better argument here.  As the VA tacitly concedes, the prevailing party cases to which it cites arguably do not apply to contractual fee-shifting cases such as this one.  In any event, the VA presents no credible basis to conclude that Griffith's race discrimination and retaliation claims were discrete and unrelated to her disability discrimination and reasonable accommodation claims, or that she obtained substantially less relief than what she would have achieved had she prevailed on all four claims.

In addition, based on the record before it, the Court finds no reason why Griffith's attorneys' fees should be reduced to account for the two claims she dropped at the summary judgment stage.  Significantly, the parties' settlement agreement contains no provision for reducing the reasonable fees incurred for those claims.  *See* (Doc. 29-3).  Nor does the settlement agreement contain a prevailing party limitation. *Id.*  Rather, the agreement simply provides that the VA is to "pay [Griffith's] costs and attorney's fees in the amount determined reasonable by order of the United States District Court." *Id.* at 2.  Notably, it additionally includes a release by Griffith of "any and all claims, demands, and causes of action, whether known or unknown,

17

which [Griffith] may have had, may now have, or may hereafter discover arising out of any event alleged in the Complaint . . . including but not limited to claims and damages for any alleged violations of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964." *Id.* at 3. The VA's position that it should now be excused from paying the reasonable fees incurred as a result of the entirety of the litigation is not tenable.

III.

As noted above, Griffith also seeks $8,933.48 in costs (Doc. 31), to which the VA does not object (Doc. 34). Upon review of the matter, the Courts finds the sought-after costs to be reasonable and, as such, grants Griffith's request. *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) (noting that section 2000e-5(k) does not distinguish between taxable and non-taxable costs); *Williams v. Consol. City of Jacksonville*, 2006 WL 4794173, at *11 (M.D. Fla. Sept. 11, 2006) (explaining that "the 'attorney's fee' allowed by Section 2000e-5(k) . . . include[s] 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs") (internal quotation marks and citation omitted), *aff'd*, 237 F. App'x 508 (11th Cir. 2007).

IV.

The final matter before the Court is Griffith's supplemental motion seeking $28,695 in attorney's fees for the time period from January 2 through April 30, 2020,

18

and costs for her fee expert, McCormack, in the amount of $4,794.   (Docs. 40, 40-3). This request fails for several reasons.

To begin, it is untimely.   In accordance with the parties' settlement agreement and their attendant request to the Court (Doc. 29), the Court entered an Order in late December 2019 dismissing this action with prejudice but retaining jurisdiction for the limited purpose of resolving Griffith's petition for attorneys' fee and costs (Doc. 30). In its Order, the Court directed Griffith to file her petition for attorneys' fees and costs no later than thirty days therefrom.   *Id.*   The Court made no provision for resolving multiple motions for fees and costs, and Griffith did not ask for permission to submit such additional requests for relief.

Furthermore, the majority of the fees and all of the costs Griffith seeks in her supplemental motion could have—and should have—been presented to the Court in her original motion.   The Court notes, for example, that the attorneys' fees reflected in the billing invoices she submits through January 27, 2020 (Doc. 40-3) could have been requested by way of her earlier motion.   The Court also finds that the attorneys' fees incurred thereafter were largely unnecessary given the posture of the case.

Finally, the costs sought for McCormack's review of the file and the preparation of his declaration would have been known to Griffith when she submitted

her first motion and should have been included therein.[4]   Griffith does not argue otherwise.

V.

Accordingly, for the reasons above, the Court hereby ORDERS:

1.      Griffith's *Motion for Attorneys Fees and Costs* (Doc. 31) is granted in part and denied in part.   Griffith is awarded $80,520 in attorneys' fees and $8,933.48 in costs.   Griffith's attorneys' fees award is calculated as follows:

| Timekeeper/Title | Hourly Rate | Hours Expended | Fees |
|---|---|---|---|
| Joseph Magri, Partner | $300 | 183.7 | $55,110.00 |
| Sean McFadden, Associate | $235 | 11.8 | $2,773.00 |
| Gerard Roble, Attorney | $130 | 68.6 | $8,918.00 |
| Meagan Ross-Culpepper, Paralegal | $95 | 35.7 | $3,391.50 |
| Angela Merkle, Paralegal | $85 | 121.5 | $10,327.50 |
| TOTAL | | 421.3 | $80,520.00 |

2.      Griffith's *Supplemental Motion for Attorneys Fees and Costs* (Doc. 40) is denied.

---

[4] McCormack apparently spent 9.4 hours of time between January 15 and 27, 2020, researching fee comparison issues and drafting his declaration at a rate of $510 per hour. (Doc. 40-3 at 8-9).

DONE and ORDERED in Tampa, Florida, this 30th day of September 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record